*751 OPINION OF THE COURT
Lee H. Elkins, J.
Paul S. is almost 13, having been born on December 16, 1983. His sister Jasity, born April 20, 1985, is 11. This court placed both children in foster care (N 9065-6/92) in early 1993. The children have continued in foster care since placement. Under a subsequent docket (NA 7267-8/93) on July 20, 1993 the court issued a temporary order of protection, stating that the children’s father, Guy Romaine S., was to have no contact with the children. Following a fact-finding proceeding in January 1994 the court found that the father sexually abused the children and inflicted excessive corporal punishment. On consent, on May 19, 1994 the court entered a dispositional order placing the children with the Commissioner of Social Services. The order specified that the respondent father enter and complete an alcohol treatment program, submit to random drug screening, accept appropriate counseling referrals and receive parenting skills training. The order also provided that the respondent was not to assault or in any way endanger the safety or welfare of the children and was "to have supervised contact with the children once the children’s therapist approves [and] father is engaged in alcohol and counseling programs”. When the matter came on for an extension of placement hearing in December 1994, the court again entered a temporary order of protection stating that the father was to have no contact with the children. When the father failed to appear for the hearing to extend placement in February 1995, the court extended placement for 12 months and entered a final order of protection (Family Ct Act § 1056) stating that the father was to have no contact with the children. In January 1996, the father again failed to appear for the extension hearing and the court again extended placement and the order of protection for a period of 12 months.
The agency filed the current petition to terminate Guy S.’s parental rights on March 18, 1996. The agency personally served the father with the summons and petition on March 22, 1996. When the father failed to appear, the agency on August 7, 1996 sent a notice of inquest by registered mail, return receipt requested. The father signed for the notice, but failed to appear on the adjourned date of September 9, 1996. The court proceeded to inquest.
At inquest, the caseworker assigned to the S. children testified that the father had no contact with the agency from the time the children were placed in foster care until the date the *752 agency filed the petition, a period of three years. The father did not enroll in alcohol or counseling programs as required by the initial placement order. The father made no inquiry about the welfare of the children, nor did the father make any attempt to ascertain what was expected of him in order to have the children returned to his care. The father’s ability to contact the agency was established not only by statutory presumption in the absence of evidence to the contrary (Social Services Law § 384-b [5] [a]), but also by the caseworker’s testimony that the worker mailed letters to the father’s home. The letters asked the father to contact the caseworker, and included the name of the worker and agency, the telephone number, and referrals for counselling.
The issue presented is whether these facts clearly and convincingly establish respondent’s abandonment of the children for the period of six months immediately prior to the date on which the petition was filed in this court (Social Services Law § 384-b [4] [b]), in light of the continuing order of protection directing that he have no contact with the children (cf., Matter of Orange County Dept. of Social Servs. [Christine S.[, 203 AD2d 367 [2d Dept 1994] [order of protection did not prevent mother from contacting children]). The Social Services Law states that "a child is 'abandoned’ by his parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed” (Social Services Law § 384-b [5] [a] [emphasis added]). Since the respondent failed to communicate with the agency regarding the children for the required statutory period, the evidence satisfies the letter of the statute.
A literal reading of the statute is necessary to promote the policy of permanency and continuity for children placed in foster care. In cases of child abuse it is often necessary to prohibit the abusive parent from having further contact with the child until the child has an opportunity to heal, and the parent has gained insight into the source of the abuse. Where the parent fails to take any steps to address the abuse, there can be no assurance against a recurrence of abuse. Therefore, a continuing order of protection is necessary in such cases. An order of protection, intended for the benefit of the child, should not become a defense against termination of the rights of a parent *753 who has refused even to contact the agency to inquire about the child, or to plan for the return of the child to the parent’s care. The parent who has been prohibited from direct contact with the child, in the child’s best interest, continues to have an obligation to maintain contact with the person having legal custody of the child (see, Domestic Relations Law § 111 [2] [a]). Failure to do so is a clear manifestation of an intent to forego parental obligations to the child. To hold otherwise permits the parent, by this refusal, to commit the child to a future of impermanence.
In cases of abandonment, the agency is not required to exercise diligent efforts to encourage the parent to visit or to communicate with the child or agency (Social Services Law § 384-b [5] [b]). The purpose of the order prohibiting contact with the children was to protect the children from additional emotional harm or further abuse. The order of protection did not impose an added duty upon the agency to exercise diligent efforts to encourage the parent to communicate with the agency about the child (see, Matter of Julius P., 63 NY2d 477 [1984]). Cases in which the child’s custodian discouraged a parent from contact with the child (cf., e.g., Matter of Michael Chad M., 143 AD2d 189 [2d Dept 1988]) are distinguishable. Despite the order of protection, the respondent was able to contact the agency to inquire about the child. The agency never discouraged or prevented communication. The record here shows that the agency requested the respondent to contact the agency on numerous occasions. Moreover, the respondent had a forum available to him if he wished to petition to modify the order of protection (Family Ct Act § 1061). At minimum, the respondent could have appeared at the hearings to extend the children’s placement in foster care (Family Ct Act § 1055 [b] [iii]).
The evidence clearly and convincingly supports the conclusion that the father manifested an intent to forego his rights and obligations as a parent by failing to make any inquiry of the agency as to measures required of him in order to have contact with his children (see, e.g., Matter of Charmaine T., 173 AD2d 625, 626-627 [2d Dept 1991]). By failing to appear at the fact-finding, the father failed to offer any explanation for this failure (supra).
*754 Accordingly the court finds that the respondent abandoned the children within the meaning of Social Services Law § 384-b (5). The matter is adjourned for a dispositional hearing as to the best interests of the children (see, Matter of Charmaine T., 173 AD2d, supra, at 627).