■ In the Matter of XENA X., a Child Alleged to be Abandoned. ALBANY COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; DANIEL Y., Respondent. [719 NYS2d 721] —Carpinello, J. Appeal from an order of the Family Court of Albany County (Duggan, J.), entered October 12, 1999, which dismissed petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be an abandoned child.

When the child who is the subject of this proceeding was born in 1997, respondent lived out of State. Within days of her birth, the child was placed in petitioner's custody. On January 20, 1998, respondent relocated to Albany County and one week later petitioned for an order of filiation and visitation. On March 4, 1998, an order of filiation was entered adjudicating respondent to be the father of the child and a separate order was entered on consent granting him supervised visitation (respondent was *pro se* at this time). On December 10, 1998, petitioner commenced this proceeding seeking to terminate respondent's parental rights on the ground of abandonment (*see*, Social Services Law § 384-b). Following a fact-finding hearing, Family Court found that petitioner failed to prove by clear and convincing evidence that respondent abandoned the child. Petitioner appeals.

Upon our review of the record, we affirm Family Court's finding that petitioner failed to prove abandonment. A finding of abandonment is warranted when it is established by clear and convincing evidence that during the six-month period immediately prior to the date of the filing of the petition, a parent evinces an intent to forego his parental rights as manifested by his failure to visit or communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by that agency (*see*, Social Services Law § 384-b [3] [g]; [5] [a]). On appeal, petitioner makes repeated references to respondent's lack of visitation and contact with the child during the relevant six-month period as evidence that he aban-

doned the child during this period. It is undisputed, however, that respondent had indeed inquired about visitation with the child following the March 4, 1998 orders and was informed by petitioner that it would not permit any visitation or contact with the child until he completed various assessments. The record further reveals that, although respondent knew generally that the child was placed in foster care through petitioner, he did not know the precise whereabouts of the child or the name or telephone number of the foster parents because petitioner would not supply him with this information.

Under these circumstances, it is patently unfair for petitioner to point to respondent's alleged failure to visit or communicate with the child as evidence of abandonment when its own caseworkers would not permit visitation or provide him with the specifics of the child's location. This is not a case where a parent is permitted to visit with a child and simply fails to attend scheduled visitation or makes no effort to schedule any visits (*compare, Matter of Baby Girl GG.*, 260 AD2d 956, *lv denied* 93 NY2d 815; *Matter of Alex MM.*, 260 AD2d 675; *Matter of Amanda JJ.*, 254 AD2d 544; *Matter of Candice K.*, 245 AD2d 821). Nor is this a case where a parent had direct access to the child (i.e., knew the child's address and telephone number) and simply chose not to avail himself or herself of that access (*compare, Matter of Omar RR.*, 270 AD2d 588; *Matter of Amanda JJ.*, *supra*; *Matter of Candice K.*, *supra*). Thus, the lack of any contact with the child during the relevant six-month period cannot be held against respondent under these circumstances and certainly cannot be deemed a manifestation of any intent on his part to abandon her.

As to respondent's contact with petitioner during the relevant six-month period, the record reveals that he contacted his caseworker on four occasions with continuous updates of his employment status and living arrangements. The record further reveals that during this six-month time period respondent was making genuine efforts to obtain permanent housing and employment, all with the belief and intention that same would pave the way for him to visit and eventually have custody of the child. To this end, respondent testified that his quest to maintain permanent employment thwarted his ability to complete the various assessments that petitioner had ordered him to attend before it would permit visitation. Respondent also testified that he requested evening sessions to avoid interference with work, to no avail. As noted by Family Court in its decision, "[respondent] tried to complete the substance abuse evaluation, but the scheduling of his appointments

jeopardized his job, and he made his judgment on his own part that staying employed was more important under the circumstances."*

Family Court obviously found respondent to be credible and sincere, citing his attempt to complete the mental health and substance abuse programs and his conduct in obtaining stable housing and employment as evidence that he did *not* evince an intent to abandon his child (*see, Matter of Baby Girl I.*, 210 AD2d 601). Under these circumstances, we discern no basis upon which to interfere with Family Court's determination, which was obviously rendered, in part, upon its assessment of credibility issues at the hearing (*see, id.*; *see generally, Matter of Christopher MM.*, 210 AD2d 767, *lv denied* 85 NY2d 807).

Crew III, J. P., Peters, Spain and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.

---

* Family Court also noted that there was no evidence in the record, including the March 1998 visitation order, that respondent had either a drug or alcohol problem, thereby evincing the need for drug and/or alcohol assessments as preconditions to visitation. The court further noted that the March 1998 visitation order only required that respondent have supervised visits and cooperate with petitioner and did not itself impose any requirement that assessments had to be completed before supervised visits could commence.