■ In the Matter of GABRIELLE HH., a Child Alleged to be Abandoned. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ADAM HH., Appellant. [760 NYS2d 269] —Kane, J. Appeal from an order of the Family Court of Columbia County (Czajka, J.), entered February 1, 2002, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be abandoned, and terminated respondent's parental rights.

Respondent is the father of an infant born in January 2000. On March 7, 2000, the child's mother filed a petition for custody in Family Court, alleging that respondent had committed a family offense, following which the court issued a temporary order of protection directing respondent to stay away from the mother and child. On March 29, 2000, at the Law Guardian's request, an investigation pursuant to Family Ct Act § 1034 was ordered to examine the allegation that the mother had gone to the home of respondent with the child. Shortly thereafter, petitioner applied for and obtained an order of temporary

removal and filed a neglect petition against both parents alleging that respondent violated the order of protection "by failing to stay away from the child." Family Court subsequently ordered that both parents undergo mental health evaluations. On May 30, 2000, petitioner filed an amended neglect petition alleging additionally that respondent had violated the order of protection by failing to appear for two scheduled mental health appointments. Thereafter, on June 8, 2000, respondent admitted to violating the order of protection and, on that basis, Family Court made a finding of neglect, issued a new order of protection and again ordered respondent to undergo a mental health evaluation. After a dispositional hearing on July 6, 2000, at which it was determined that respondent had still not participated in a mental health evaluation, Family Court issued a dispositional order and a one-year order of protection directing, among other things, that he have "[n]o contact, direct or indirect, with the mother or child including, but not limited to, no telephone calls and no messages of any kind." On May 1, 2001, petitioner filed a petition seeking to terminate respondent's parental rights on the basis of abandonment and, after a hearing, Family Court granted the petition; thereafter an order of disposition terminating respondent's parental rights was entered.* Respondent appeals and we affirm.

Initially, contrary to respondent's contentions, a petitioning agency has no responsibility to demonstrate that it made diligent efforts to encourage a meaningful relationship between a parent and child where, as here, the termination petition is based solely upon abandonment (see Matter of Julius P., 63 NY2d 477, 481 [1984]; Matter of Chantelle TT., 281 AD2d 660, 661 [2001]; Matter of Pasquale U., 279 AD2d 906, 908 [2001]; Matter of Arianna SS., 275 AD2d 498, 499 [2000]; Matter of Ulysses T., Jr., 87 AD2d 998, 998-999 [1982], affd 66 NY2d 773 [1985]; see also Social Services Law § 384-b [4] [b]).

"A finding of abandonment is warranted when it is established by clear and convincing evidence that during the six-month period immediately prior to the date of the filing of the petition, a parent evinces an intent to forego his [or her] parental rights as manifested by his [or her] failure to visit or communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by that agency"

---

* Petitioner also filed a termination petition against the mother alleging that she is mentally retarded. The mother eventually signed a judicial surrender of guardianship and custody of the child; however, Family Court agreed not to sign the approval order until and unless the petition to terminate respondent's parental rights was granted.

(*Matter of Xena X.*, 279 AD2d 691, 691 [2001] [citations omitted]; *see Matter of Charles U.*, 254 AD2d 588, 588-589 [1998]; *Matter of Candice K.*, 245 AD2d 821, 821-822 [1997]; *see also* Social Services Law § 384-b [3] [g]; [4] [b]; [5]). A parent's ability to visit and communicate with his or her child or the agency is presumed in the absence of evidence to the contrary (*see* Social Services Law § 384-b [5] [a]; *Matter of John Z.*, 209 AD2d 821, 822 [1994]). Where good reason exists for a parent's failure to visit or communicate with a child, that failure is not, by itself, sufficient to establish abandonment (*see Matter of Anthony T.*, 208 AD2d 985, 986 [1994], *lv denied* 85 NY2d 801 [1995]; *see also Matter of John Z., supra* at 822). The issue here distills to whether respondent's lack of contact with the child or the agency, under the circumstances of this case, evinced an intent to forego his parental rights such that the finding of abandonment was warranted.

While it is uncontroverted that respondent did not have any contact with the child or the agency during the six months prior to the filing of the May 1, 2001 abandonment petition, respondent contends that the broadly worded order of protection directing him to have no direct or indirect contact with the child constitutes good cause. "An order of protection, intended for the benefit of the child, should not become a defense against termination of the rights of a parent who has refused even to contact the agency to inquire about the child, or to plan for the return of the child to the parent's care. The parent who has been prohibited from direct contact with the child, in the child's best interest, continues to have an obligation to maintain contact with the person having legal custody of the child (*see* Domestic Relations Law § 111 [2] [a]). Failure to do so is a clear manifestation of an intent to forego parental obligations to the child. To hold otherwise permits the parent, by this refusal, to commit the child to a future of impermanence" (*Matter of Paul S.*, 170 Misc 2d 750, 752-753 [1996]). (*See Matter of Krysheena*, 265 AD2d 816 [1999].)

We reject respondent's contention that the order of protection prohibiting direct and indirect contact with the child impliedly barred this respondent from contacting petitioner. Even though such a broad order of protection might cause confusion to an uncounseled parent concerning the parent's obligation to maintain contact with petitioner in order to plan for the child's future, there is no proof in this case that respondent was either uncounseled or confused. At the Social Services Law § 384-b hearing, respondent never asserted that he believed he was prohibited by the order of protection from

contacting petitioner, planning for his child's future, providing support for the child, or even inquiring about the child's well-being. While we agree with the dissent that respondent was never asked what he believed the order of protection meant, we disagree with the conclusion to be drawn therefrom. Because this question was never asked, there is no proof in the record as to what respondent believed. For respondent to now claim that the order of protection was the reason for his failure to contact petitioner is nothing more than unsubstantiated afterthought.

The proof established that respondent, while represented by counsel, admitted to having neglected the child based upon allegations of violence between the parents and respondent's violation of an order of protection. The proof further demonstrated that during the pendency of the neglect proceeding, not only did respondent fail to comply with the order of protection, but he additionally failed to comply with two separate court orders requiring him to attend mental health evaluations, one issued prior to fact-finding and one issued prior to disposition. Clearly, it was, in part, respondent's failure to follow court orders that resulted in the broad order of protection. Prior to accepting respondent's admission to the neglect petition, Family Court advised respondent of his continuing obligation to "plan to care for and support the child." Both at the time of respondent's admission and at the time of the disposition in the neglect proceeding, respondent was represented by counsel. The record does not reflect that counsel advised respondent that he could not contact petitioner to inquire about his child or the possibility of visitation. In fact, the record does not reflect that respondent ever made inquiry about his rights and obligations.

Respondent's failure to communicate with petitioner for six months preceding the filing of the termination petition was established by clear and convincing evidence. Respondent's failure to maintain the required contact was not due to any conduct of the agency, but rather was consistent with respondent's disregard of court orders and "evince[d] an intent to forego his * * * parental rights and obligations" (Social Services Law § 384-b [5] [a]; see Matter of John Z., 209 AD2d 821, 822 [1994], supra; see also Matter of Krysheena, 265 AD2d 816 [1999], supra). We therefore affirm the order of Family Court.

Cardona, P.J., Peters and Carpinello, JJ., concur.

Spain, J. (dissenting). Because I disagree with the majority's conclusion that respondent's failure to communicate with his child or petitioner is clear and convincing evidence that he

manifested "an intent to forego his parental rights" so as to support a finding of abandonment (Social Services Law § 384-b [3] [g]; [4] [b]; [5] [a]; *see Matter of Xena X.*, 279 AD2d 691, 692 [2001]; *cf. Matter of Ronald D., Jr.*, 282 AD2d 533 [2001]; *see Matter of Charles U.*, 254 AD2d 588, 588-589 [1998]; *Matter of Candice K.*, 245 AD2d 821, 821-822 [1997]; *Matter of Jay Scott P., Jr.*, 244 AD2d 906 [1997]; *Matter of Naticia Q.*, 226 AD2d 755, 756 [1996]), I respectfully dissent.

While respondent's noncontact with the child or petitioner during the six months prior to the filing of the abandonment petition is not controverted, I find merit in respondent's contention that the broadly worded order of protection directing him to have no "direct or indirect" contact with the child, which remained in effect throughout the relevant period, constituted good cause (*see Matter of Xena X., supra; cf. Matter of Anthony T.*, 208 AD2d 985, 986 [1994], *lv denied* 85 NY2d 801 [1995]). Significantly, petitioner—the agency—requested the order of protection which is susceptible of the interpretation that even respondent's contact with petitioner could constitute the forbidden "indirect" contact with the child. Moreover, respondent appeared at the hearing, challenged the allegation of abandonment, and testified, without contradiction, that from the time the child was in foster care, no one ever informed him that, despite the order of protection, he should and could maintain contact with petitioner to inquire about his child; the record does not otherwise reflect that he was ever informed by anyone that he could do so, i.e., the unwritten exception to the seemingly unqualified order of protection was never explained to him (*see* Domestic Relations Law § 111 [2] [a]; *cf. Matter of Krysheena,* 265 AD2d 816 [1999]; *Matter of Jay Scott P., Jr., supra* at 907; *Matter of Charmaine T.*, 173 AD2d 625, 626-627 [1991]). At the hearing, the child's caseworker testified that she never contacted respondent during the relevant period. In my view, while respondent was never asked about his subjective understanding regarding the scope of the restrictions in the order of protection, his testimony reflects that he was confused by the order. Objectively viewed, I believe that such an unqualified order of protection itself undermines the statutory presumption of respondent's ability to communicate with petitioner, as well as the finding of intent to forego parental rights, providing good reason for such parental failure (*see Matter of Xena X., supra* at 691-692; *cf. Matter of Jasmine T.*, 162 AD2d 756, 757 [1990], *lv denied* 76 NY2d 714 [1990]). At the very least, the order strongly discouraged contact with petitioner and, at worst, prohibited or prevented it (*see Matter of Xena X., supra* at 691; *cf. Matter of Charles U., supra* at 588-

589; *Matter of Candice K., supra* at 822; Social Services Law § 384-b [3] [g]; [4] [b]; [5]).

The case relied upon by the majority, *Matter of Paul S.* (170 Misc 2d 750 [1996]), is materially distinguishable as it involved an agency's vain, repeated requests that a father contact it and the father's failure, despite notice, to appear at the hearings scheduled to extend his children's placement and to terminate his parental rights (*id.* at 751). Here, by contrast, respondent had been warned by Family Court that "direct or indirect" contact with the child could result in his incarceration, and his understanding that he could and should maintain contact with petitioner cannot be imputed.

Finally, although standing orders of protection generally do not prohibit abandonment findings (*see e.g. Matter of T. Children*, 284 AD2d 401 [2001]; *Matter of Jay Scott P., Jr., supra* at 907; *Matter of Naticia Q., supra* at 756; *Matter of Charmaine T., supra* at 627), this order is distinguishable in its comprehensive prohibition of any contact "direct or indirect." In my view, in light of the wording of the order, Family Court, as well as petitioner, had an affirmative responsibility to at least make it clear to respondent that he could inquire of petitioner without violating the order. Thus, I would find that respondent demonstrated good reason for his failure to contact petitioner and the record does not support the finding of abandonment. Ordered that the order is affirmed, without costs.