■ In the Matter of ALEXA L., a Child Alleged to be Abandoned. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NILZA L., Appellant. (Proceeding No. 1.) In the Matter of ASIA L., a Child Alleged to be Permanently Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NILZA L., Appellant. (Proceeding No. 2.) In the Matter of ASIA L., a Child Alleged to be Abandoned. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NILZA L., Appellant. (Proceeding No. 3.) (And Another Related Proceeding.)
[912 NYS2d 738]—

Kavanagh, J. Appeals (1) from an order of the Family Court of Columbia County (Czajka, J.), entered October 8, 2009, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Social Services Law § 384-b, to adjudicate Alexa L. to be an abandoned child, and terminated respondent's parental rights, and (2) from two orders of said court, entered October 7, 2009, which granted petitioner's applications, in proceeding Nos. 2 and 3 pursuant to Social Services Law § 384-b, to adjudicate Asia L. to be a permanently neglected and abandoned child, and terminated respondent's parental rights.

Respondent has twin daughters, Alexa L. and Asia L. (born in 1994) who, at an early age, were placed with their maternal aunt and remained in her custody until 2006, when the aunt voluntarily surrendered custody of Alexa to petitioner.[1] One year later, petitioner filed the first of multiple petitions against respondent, alleging that she had abandoned Alexa. At the first hearing on that petition, the aunt indicated that she could no longer care for Asia, and informed the court that Asia had recently begun living with respondent. When petitioner raised questions as to respondent's fitness to care for Asia due to her prior incarcerations and ongoing difficulties with substance abuse, Family Court directed that respondent submit to a urine screen, which tested positive for cocaine. Asia was immediately removed from respondent's care and placed with petitioner, and a petition was filed charging respondent with neglect of Asia

---

1. Alexa suffers from a myriad of significant medical and developmental maladies, which made it impossible for the aunt to care for her and remain gainfully employed.

and Alexa.[2] Respondent failed to appear at the fact-finding hearing, and Family Court found that she had neglected both children and, in addition, had abandoned Alexa. A dispositional hearing was subsequently held and, in an order that was not entered until October 2009, Family Court determined that Alexa would be freed for adoption.[3] Meanwhile, Asia remained in petitioner's care, and the court ordered that respondent would not be allowed to visit her while these proceedings were pending.

In February 2009, additional petitions were filed alleging that respondent had permanently neglected Asia and had abandoned her. After fact-finding and dispositional hearings were held, Family Court sustained the allegations contained in the petitions and terminated respondent's parental rights to Asia. Later, in October 2009, the court issued two additional orders, which declared that respondent had permanently neglected and abandoned Asia, and terminated her parental rights. Respondent now appeals from the three orders.

Initially, we address respondent's claim that Family Court erred in finding that she abandoned both children. A child will be considered abandoned when the parent, for the six-month period immediately proceeding the filing of the abandonment petition (see Social Services Law § 384-b [4] [b]), fails "to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]). Unless evidence is presented establishing that the parent was unable to have contact with the child during this period, the ability to visit and communicate with the child will be presumed (see Social Services Law § 384-b [5] [a]).

Here, it is undisputed that respondent had no contact with either Alexa or Asia for the six-month period prior to the abandonment petitions being filed. Thus, it was respondent's burden to establish that, during this period, she was unable to maintain contact with her child or, if able, was discouraged or prevented from doing so (see Social Services Law § 384-b [5] [a]; *Matter of Kaitlyn E. [Lyndsay E.]*, 75 AD3d 695, 696 [2010]; *Matter of Jackie B. [Dennis B.]*, 75 AD3d 692, 693 [2010]). Moreover, even where the parent cannot, through no fault of his or her own, have contact with the child, he or she continues "to have an obligation to maintain contact with the person having legal

---

**2.** The children's biological father was also named in the neglect petition, but he subsequently surrendered his parental rights to both children.

**3.** Because of the determination that respondent had abandoned Alexa, the neglect petition as it related to Alexa was dismissed as moot.

custody of the child [and f]ailure to do so is a clear manifestation of an intent to forego parental obligations to the child" (*Matter of Gabrielle HH.*, 306 AD2d 571, 573 [2003], *affd* 1 NY3d 549 [2003] [citation omitted]; *see Matter of Tiffany RR.*, 44 AD3d 1126, 1128 [2007], *lv denied* 9 NY3d 819 [2008]).

As for Alexa, respondent acknowledges being aware that the child had been placed with petitioner, yet she had limited contact with the child's caseworker during the relevant period. In fact, the caseworker documented her repeated efforts to contact respondent by mail regarding Alexa's placement in foster care, yet all but one of these certified letters sent to respondent were returned unclaimed. It is noteworthy that, during this period, respondent did not contact the caseworker even though she was well aware of the child's serious medical problems and that the child was scheduled to undergo at least one major medical procedure during this time. Moreover, respondent made no effort to communicate with any of the medical professionals who were treating Alexa. Based on this evidence—which is essentially uncontroverted—petitioner established by clear and convincing evidence that respondent had abandoned Alexa (*see Matter of Kaitlyn E. [Lyndsay E.]*, 75 AD3d at 696-697; *Matter of Gabriel D. [Andrea D.]*, 68 AD3d 1505, 1506 [2009], *lv denied* 14 NY3d 703 [2010]; *Matter of Jacob WW.*, 56 AD3d 995, 997-998 [2008]; *Matter of Tiffany RR.*, 44 AD3d at 1127-1128).

As for Asia, respondent argues that petitioner prevented her from contacting the child because it required that she first meet with the child's therapists, submit to drug and alcohol evaluations, as well as mental health assessments, and participate in recommended programming. Respondent claims that she was willing but unable to participate in these programs because she was involved in an abusive relationship that made it impossible for her to attend. While this explanation may account for some of the problems respondent encountered during this period, it does not explain why she repeatedly failed to attend scheduled court appearances that involved Asia.

Moreover, with respect to the permanent neglect petition, petitioner established that, during this period, it made diligent efforts to assist, encourage and strengthen respondent's relationship with Asia (*see* Social Services Law § 384-b [7] [a], [f]; *Matter of Ronnie P. [Danielle Q.]*, 77 AD3d 1094, 1095 [2010]; *Matter of Sierra C. [Deborah D.]*, 74 AD3d 1445, 1446-1447 [2010]), but these efforts were largely unsuccessful due to respondent's failure to cooperate. In that regard, petitioner's caseworker testified that respondent was made aware of multiple programs—such as parenting and anger management

classes—that she needed to take before she could establish a relationship with Asia. She was provided with contact information, and arrangements were made for her to enroll in these programs, but, as Family Court found, respondent did not make an earnest attempt to participate in any of them. As a result, the record is replete with evidence that respondent, despite petitioner's efforts, did not participate in planning for Asia's future during the year that she had been placed with petitioner prior to the filing of the permanent neglect petition (see Social Services Law § 384-b [7] [a], [c]; Matter of Keegan JJ. [Amanda JJ.], 72 AD3d 1159, 1160-1161 [2010]; Matter of James X., 37 AD3d 1003, 1005-1006 [2007]). For these reasons, Family Court's determination that respondent permanently neglected and abandoned Asia has ample support in the record and must be affirmed.

Respondent also argues that Family Court erred by terminating her parental rights as to Asia, as opposed to simply issuing a suspended judgment. A therapist treating Asia testified that the child had been having difficulty adjusting to her foster home environment, in part because of the unsettled nature of her relationship with respondent. The therapist, noting that the child had reactive attachment disorder that made her particularly vulnerable to disappointments stemming from her relationship with respondent, found that it was difficult for the child to adjust to placement while, at the same time, harboring hopes of a reunion with respondent. The therapist also found that Asia had begun to adjust to foster care and expressed an interest in being adopted because of her concerns about whether respondent would be able to properly provide for her if she were returned to respondent's care. Based upon our review of the record, we find no reason to disturb Family Court's determination that it was in Asia's best interests to terminate respondent's parental rights, as opposed to granting a suspended judgment (see Matter of Keegan JJ. [Amanda JJ.], 72 AD3d at 1161-1162; Matter of Nevaeh SS. [Valerie L.], 68 AD3d 1188, 1189-1190 [2009]; Matter of Raine QQ., 51 AD3d 1106, 1106-1107 [2008], lv denied 10 NY3d 717 [2008]).

Finally, while the attorney for Asia argues that Family Court should have allowed posttermination visitation between her and respondent, there is no statutory authorization for allowing those visits once respondent's parental rights were terminated (see Matter of Raine QQ., 51 AD3d at 1107; Matter of Melissa DD., 45 AD3d 1219, 1221-1222 [2007], lv denied 10 NY3d 701 [2008]; Matter of James X., 37 AD3d at 1007). Respondent's remaining contentions have been reviewed and found to be lacking in merit.

Mercure, J.P., Malone Jr., Garry and Egan Jr., JJ., concur. Ordered that the orders are affirmed, without costs.