■ In the Matter of SYLES DD., a Child Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; FELICIA DD., Appellant. [937 NYS2d 390]—

McCarthy, J.

---

"The threshold inquiry in a permanent neglect proceeding is whether petitioner established by clear and convincing evidence that it made diligent efforts to encourage and strengthen the parent-child relationship" (*Matter of Alycia P*, 24 AD3d 1119, 1120 [2005] [citations omitted]; *see* Social Services Law § 384-b [7] [a]). Here, petitioner presented the testimony of two of its caseworkers who worked with the family, as well as the child's counselor from an outside agency. Petitioner also submitted records from numerous agencies. These documents and witnesses established that petitioner offered or referred respondent to parenting classes, weekly visitation, individual counseling, domestic violence counseling, anger management classes, temporary shelter, transportation to visits and appointments, regular service plan reviews, and counseling with the child to strengthen the parent-child bond. Thus, petitioner made the required diligent efforts (*see Matter of Alexa L. [Nilza L.]*, 79 AD3d 1290, 1292-1293 [2010]).

Petitioner also established that respondent failed to develop a realistic plan for the child's future. While respondent disagrees with some of Family Court's findings, instead pointing to her own testimony or that of her witnesses, we defer to the hearing court's credibility determinations (*see Matter of Kaiden AA. [John BB.]*, 81 AD3d 1209, 1211 [2011]). Respondent testified that she initially was upset with petitioner for removing her child and would not cooperate with recommended services. Despite not being employed, she refused to enroll in day sessions of parenting education classes to which she was referred in August 2008, because they might conflict with employment if she did find a job. She eventually enrolled in evening parenting classes in June 2009 and completed them in August 2009. She refused to engage in preventative services because she believed that they were not specifically required by court order, although

she testified at the hearing that she would engage in those services if they were required to have her son return to her care. Respondent did not engage in or recognize a need for anger management or domestic violence treatment or counseling, despite several altercations with her fiancé resulting in police intervention. Respondent complained that petitioner did not assist her to find suitable housing, but she declined the referral to a domestic violence shelter and eventually moved back in with her fiancé. Notwithstanding the domestic violence she experienced, including incidents in the presence of her daughter, respondent proffered her fiancé as a resource to assist her in caring for her son.

Respondent attended less than half of the child's counseling sessions that were arranged partly to assist in working through family issues and to strengthen the bond between her and her son. She initially refused to attend attention deficit hyperactivity disorder classes that were required as part of an evaluation process to determine if her child had a diagnosable disorder. Respondent also failed to regularly visit with her son. Petitioner arranged regular weekly visits with respondent, and even increased them to weekend unsupervised overnight visits. The overnight visits had to be rearranged because respondent had a dispute with the foster parent who was providing transportation. When petitioner attempted to arrange for a weekday overnight visit, respondent apparently responded that she would have to think about it and that she could not get up early to get the child to school. She then did not see the child for three months, apparently because she was having personal conflicts with her fiancé. Following her first visit after that three-month gap, respondent went another three months without visiting her child. Overall, respondent missed 15 of 40 scheduled visits. Of the potential or actual visits that could have occurred during the relevant time period, respondent missed 44 of 66 visits. Although respondent eventually completed or engaged in some of the required or recommended classes and services, her efforts were belated or inconsistent. Considering respondent's failure to consistently visit with her child, adequately establish a stable and safe living environment for him, and meaningfully establish a realistic plan for his future, Family Court properly determined that she permanently neglected her son (*see Matter of Nicholas R. [Jason S.]*, 82 AD3d 1526, 1528 [2011], *lv denied* 17 NY3d 706 [2011]; *Matter of Destiny CC.*, 40 AD3d 1167, 1169 [2007]).

Family Court did not err in terminating respondent's parental rights, as a suspended judgment would not have been in the child's best interests (*see Matter of Kellcie NN. [Sarah NN.]*, 85

AD3d 1251, 1252 [2011]). Although respondent obtained employment prior to the dispositional hearing, her varying work schedule caused her to miss visits, counseling sessions and other appointments. She refused to ask her boss for set days off for visitation, asserting that she did not want her employer to know her personal business. Respondent had a personality conflict with the visitation supervisor, causing respondent to refuse to provide her work schedule to the supervisor; instead, respondent gave her schedule to petitioner's caseworker, who then had to furnish it to the other service providers. Respondent also refused to consent to the child receiving medication that had been prescribed. While respondent contended that she merely needed more information and wanted a second opinion, she did not contact the medical provider, although petitioner supplied her with the phone number. Respondent's testimony indicated that she was more concerned with her rights, and upset that petitioner did not include her in the decision-making process, than with her son's needs. She lacked insight into the need for counseling with the child to address the reason for his removal (compare Matter of Sayeh R., 91 NY2d 306, 315 [1997]). Respondent implied that sending her son home to live with her would solve his attachment and adjustment disorders.

Although respondent had reasons for missing many of her visits and appointments, stability is important for this child, especially in light of his special needs. Her reasons for missing visits are irrelevant to him; any missed visit leaves him feeling unloved or forgotten, and the possibility that respondent might not show up causes him anxiety before every visit. Additionally, the frequency of the child engaging in physical altercations with other children increased after scheduled visits, whether the visit took place or not. On the other hand, the child was living in a foster home with a woman who was willing and ready to adopt him, and who had sons that the child referred to as his brothers. Considering all of the circumstances, Family Court did not abuse its discretion in terminating respondent's parental rights (see Matter of Alexa L. [Nilza L.], 79 AD3d at 1293; Matter of Keegan JJ. [Amanda JJ.], 72 AD3d 1159, 1161-1162 [2010]; Matter of Nevaeh SS. [Valerie L.], 68 AD3d 1188, 1189-1190 [2009]).

Mercure, A.P.J., Rose, Lahtinen and Kavanagh, JJ., concur. Ordered that the orders are affirmed, without costs.