Garry, J.
Appeals from two orders of the Family Courts of Schuyler County and Tompkins County (Sherman, J.), entered June 6, 2012 and July 10, 2012, which partially granted petitioner’s applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondents are the aunt and uncle of a niece (born in 2001) and nephew (born in 2003) who had previously been freed for adoption after they were adjudged to be permanently neglected by their parents (see generally Matter of Shania D. [Peggy E.], 82 AD3d 1513 [2011]). In 2009, they were placed by the Family Court of Tompkins County (Sherman, J.) in the custody of respondents, who planned to adopt them. Thereafter, they resided in Schuyler County with respondents and respondents’ three children. In October 2011, one of respondents’ daughters— then age 16 — told a school counselor that her father (i.e., the uncle) had physically abused her as well as the nephew.[1] Following an investigation, petitioner commenced these proceedings in Schuyler County pursuant to Family Ct Act article 10, alleging *1169 that respondents had neglected the niece, nephew, the daughter and another of respondents’ children.
In January 2012, the attorney for the niece and nephew moved in the Family Court of Tompkins County (Sherman, J.) to modify the prior existing permanency plan by returning the niece and nephew to the custody of the Tompkins County Department of Social Services (hereinafter Tompkins DSS). The motion was granted, and the niece and nephew were removed from respondents’ care and placed with foster parents. Thereafter, the Tompkins County permanency proceedings and the Schuyler County neglect proceedings were consolidated to be heard in Schuyler County. Following a fact-finding hearing, the court concluded that respondents had neglected the nephew only, and transferred the proceedings to Tompkins County for disposition. Family Court conducted a hearing and then ordered the nephew to be placed in the custody and guardianship of Tompkins DSS pending placement for adoption. Respondents appeal.
Contrary to respondents’ claim, a hearing was not required relative to the January 2012 motion to remove the niece and nephew from their custody. Family Ct Act § 1027 did not apply, as the motion was not made as part of the Family Ct Act article 10 neglect proceedings in Schuyler County, but instead as part of the original permanent neglect proceedings in the Family Court of Tompkins County, pursuant to Social Services Law § 384-b and Family Ct Act, article 6, part 1. Where, as here, a child is placed with a relative in such proceedings, Family Court “retain[s] continuing jurisdiction over the parties and the child and may . . . modify or extend its order, if the . . . relative fails to institute a proceeding for the adoption of the child within six months after the entry of the order” (Social Services Law § 384-b [3] [a]). The 2009 orders by which the niece and nephew were placed with respondents provided that adoption proceedings would be filed within six months, but no such proceedings had been commenced at the time of the January 2012 motion. Respondents contend that this delay was explained in part by an appeal in the permanent neglect proceedings — resolved in March 2011 — and that adoption papers were being prepared by their attorney when the January 2012 motion was made. Nonetheless, no hearing was required, and the Family Court of Tompkins County did not err in exercising its continuing jurisdiction to modify the placement of the niece and nephew.
Respondents next contend that the record does not support the conclusion that they neglected the nephew. Whether a parent or caretaker has neglected a child by failing to exercise the *1170 requisite “minimum degree of care” (Family Ct Act 1012 [f] [i] [B]) depends upon whether “a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing . . . tak[ing] into account the special vulnerabilities of the child” (Nicholson v Scoppetta, 3 NY3d 357, 370 [2004] [citation omitted]; see Matter of Izayah J. [Jose I.], 104 AD3d 1107, 1109 [2013]; Matter of Kaleb U. [Heather V. — Ryan U.], 77 AD3d 1097, 1098-1099 [2010]). Failure to respond appropriately to a child’s special needs may constitute neglect “even when those needs may not seriously implicate general physical health” (Matter of Sayeh R., 91 NY2d 306, 315 [1997]). Here, the nephew was diagnosed with posttraumatic stress disorder and pervasive development disorder, and was enrolled in a special education program. His treating psychotherapist testified that his disorders are characterized by hypervigilance, overreactivity and motor, verbal and emotional delays. The nephew, who was described by the psychotherapist and his teacher as “emotionally fragile,” had frequent violent tantrums during which he broke and threw things and hit and kicked people.
Family Court based the determination that respondents had neglected the nephew upon their inappropriate methods of discipline. Several witnesses testified that they were told by the nephew and other children in the household that respondents had punished the nephew by, among other things, restraining him for extended periods, spanking him, forcing him into cold showers and binding his hands and mouth with duct tape. A caseworker testified regarding the nephew’s description of specific punishments imposed, including taping his hands together and striking him with a belt. Both the niece and nephew stated that the uncle had slapped the nephew and described his spankings as “hard.” The nephew’s teacher and his psychotherapist testified that the nephew had made similar statements to them. The psychotherapist asserted that respondents’ disciplinary methods would have adverse effects on a child with posttraumatic stress disorder and pervasive development disorder because “it would exacerbate the trauma that’s already there” and confuse the child with regard to the appropriateness of violence. The uncle acknowledged using some of these forms of discipline, but denied the severity and explained that the purpose was therapeutic rather than punitive; for example, the showers were intended to help the nephew calm down after tantrums, using cool rather than cold water, and the tape was used only once on the child’s hands to cure a wart. However, this Court defers to Family Court’s resolution of credibility issues (see e.g. Matter of Loraida R. [Lori S.], 97 *1171 AD3d 925, 927 [2012]) and, here, the court found that the nephew had “reasonably perceived” the uncle’s actions as severe punishments that — given his age and limitations — he could not understand. The court concluded that the nephew had suffered resulting emotional damage (see Family Ct Act § 1012 [f] [1] [B]).
Additional testimony revealed that respondents failed to fully understand or acknowledge the nephew’s special needs. The psychotherapist testified that respondents were not receptive to her suggestion that the nephew needed a higher level of services, and his teacher testified that they turned down an offer to transfer him into a different educational program because they did not feel he needed it. The uncle testified that they did not believe the recommended services were “relevant” to the nephew, and further stated that he was uncomfortable with the nephew’s diagnoses because, in the uncle’s view, he was simply “a child that needed extra attention.” We note that there was testimony favorable to respondents — for example, the nephew’s teacher described them as concerned and caring, stating that they communicated regularly with her, showed affection for the nephew and were responsive to her concerns. Nonetheless, we find a sound and substantial basis in the record for a finding of neglect based upon respondents’ use of inappropriately severe disciplinary measures and their lack of insight regarding his special needs and disorders, causing imminent danger to his emotional and mental health (see Matter of Izayah J. [Jose I.], 104 AD3d at 1110; Matter of Syles DD. [Felicia DD.], 91 AD3d 1054, 1057 [2012], lv denied 18 NY3d 810 [2012]).
The uncle next contends that Family Court erred by failing to return the nephew to his care following the dispositional hearing.[2] The primary concern in such a hearing is the best interests of the child, an inquiry that “involves consideration of the parent’s ability to supervise the child and any potential threat of future abuse or neglect” (Matter of Kathleen OO., 232 AD2d 784, 786 [1996]; accord Matter of Hobb Y., 56 AD3d 998, 999 [2008]). An adoption worker for Tompkins DSS testified that the nephew had been hospitalized shortly after his placement with the foster family as the result of a violent outburst and, at the time of the hearing, he was still residing in a psychiatric center. The worker described him as “a very troubled little boy” who was “struggling,” and she testified that she believed it was in his best interests to remain at the psychiatric center for continued treatment. While the uncle testified that he recognized the nephew’s need for treatment and was willing to facili *1172 tate any necessary care, the evidence of the worsening of the nephew’s symptoms, combined with the uncle’s previous inappropriate responses to his needs, supports the court’s determination that continued placement in petitioner’s custody was in the nephew’s best interests (see Matter of Gloria DD. [Brenda DD.], 99 AD3d 1044, 1045-1046 [2012]; Matter of Amber VV., 22 AD3d 967, 968-969 [2005], lv denied 6 NY3d 708 [2006]).[3]
Finally, the uncle contends that Family Court erred by failing to return the niece to his care. However, the orders appealed from in these proceedings made no provisions for the niece, who was not adjudicated to be neglected and who was removed from respondents’ custody pursuant to an order in the permanent neglect proceedings from which no appeal was taken. In any event, it appears that the niece’s adoption by the foster parents has been finalized during the pendency of this appeal, thus rendering this aspect of the matter moot (see Matter of Karlee JJ. [Jessica JJ.], 105 AD3d 1304, 1305 [2013]).
Peters, P.J., Rose and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.

. The daughter later recanted these allegations, and Family Court’s ultimate determinations were based on the testimony of other witnesses.

. The aunt did not raise this issue on appeal.

. The uncle lacks standing to seek visitation (see Family Ct Act § 1081; Domestic Relations Law §§ 71, 72; Matter of Katrina E., 223 AD2d 363, 363-364 [1996], lv denied 88 NY2d 809 [1996]; Matter of David M. v Lisa M., 207 AD2d 623, 624 [1994]); we are thus unable to grant his request for such relief, despite noting that it might in fact be in the child’s best interests to be allowed to retain some contact with his family.